**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**December 22, 2025**

# In the Court of Appeals of Georgia

A25A2163. SOTO v. DANIELS.

RICKMAN, Presiding Judge.

In this legitimation case, the trial court legitimated the father, Martin Isreal Soto and granted primary physical custody of the minor child to the mother, Tiffany Renee Daniels. The father appeals contending that the trial court erred by awarding primary physical custody to the mother and failing to incorporate a permanent parenting plan in its legitimation order that fully complies with OCGA § 19-9-1. For the following reasons, we affirm in part, but vacate the trial court's legitimation order and remand this case so that the court may issue an order that fully complies with OCGA § 19-9-1.

The record shows that in January 2022, the father, a New Jersey resident, filed a petition for custody alleging that the minor child had been in a car accident while in his mother's care.[1] The petition alleged that the mother was the driver of the vehicle involved in the car accident and that she was arrested for driving under the influence following the accident. In February 2022, the trial court granted the father temporary physical custody. In March 2025, the father filed an amended petition seeking both permanent physical custody and legitimation.

Following a hearing, the trial court issued a final order of legitimation in which it found that it was in the best interests of the minor child to legitimate the father's relationship with the minor child. In regards to custody, the trial court stated in its order that it "has labored and thought extensively about the issue of custody. Both parents are loving and now fit to care for the minor child." Ultimately, the trial court granted the mother primary physical custody and the mother and father joint legal custody. When outlining visitation, the trial court stated that "[b]ecause the [father] resides in New Jersey and the [mother] resides in Georgia, the [trial court] finds that

[1] We note that the initial custody petition alleges that the father was the legal father of the minor child. It is undisputed, however, that at the time the father was given custody he had not yet legitimated the child. This discrepancy is not an issue on appeal.

a traditional parenting plan is not appropriate." The trial court then set out the minimum amount of visitation to which the father would be entitled, in the event that the parties were unable to agree on the terms of visitation. This appeal followed.

1. The father contends that the trial court erred by awarding primary physical custody to the mother.

(a) Initially, the father argues that the trial court erred by awarding primary physical custody to the mother because she failed to file a responsive pleading or counterclaim seeking custody. Citing OCGA § 19-9-23,[2] the father complains that to

---

[2] OCGA § 19-9-23 provides:
(a) A complaint seeking a change of legal custody or physical custody shall be initiated in compliance with Article VI, Section II, Paragraph VI of the Constitution of this state. (b) No complaint specified in subsection (a) of this Code section shall be made in response to: (1) A petition for a writ of habeas corpus seeking to enforce a child custody order; or (2) Any other action or motion seeking to enforce a child custody order, including, but not limited to, a motion for contempt. (c) The use of a complaint in the nature of habeas corpus seeking a change of child custody is prohibited. (d) A party may bring a counterclaim for modification of legal custody or physical custody in response to a complaint brought under subsection (a) of this Code section.

seek a "change of child custody" the mother must have filed a separate complaint for modification or a counterclaim for modification.

This action, however, was an initial custody determination, not a modification of custody. Because the father had not yet legitimated the minor child, only the mother was entitled to custody of the child. See OCGA § 19-7-25 ("Only the mother of a child born out of wedlock is entitled to custody of the child, unless the father legitimates the child as provided in Code Section 19-7-22. Otherwise, the mother may exercise all parental power over the child."). The fact that there had been an interim custody award did not change the nature of the proceedings. "[A] temporary custody order is intended merely to ensure that the child is adequately cared for until further order of the court, and a temporary order does not decide any final issues between the parties." *McManus v. Johnson*, 356 Ga. App. 880, 882 (849 SE2d 708) (2020) (punctuation omitted). "In fact, the Supreme Court of Georgia has specifically held that a trial court may alter a temporary custody determination without a demonstrated change in material condition." *Byrne v. Byrne*, 365 Ga. App. 240, 242 (1) (b) (878 SE2d 95) (2022). Because this was an initial permanent custody determination

between the parties, the mother was not required to comply with the requirements of OCGA § 19-9-23. See *Byrne*, 365 Ga. App. at 240-242 (1) (a).

(b) Turning to the primary custody determination, we are mindful that a trial court has broad discretion when deciding which parent is entitled to custody of their child and that "it is the duty of the trial judge to resolve the conflicts in the evidence." *Byrne*, 365 Ga. App. at 241 (1) (a) (quotation marks omitted). In Georgia,

> [w]here, as here, the trial court has exercised its discretion and awarded custody of children to one fit parent over the other fit parent, an appellate court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. Where there is any evidence to support the decision of the trial court, an appellate court cannot say there was an abuse of discretion.

Id. (punctuation omitted.)

In this case, the trial court heard testimony at the final hearing from the father, the mother, the maternal grandmother, the maternal aunt, the paternal grandfather, and the guardian ad litem ("GAL"). The GAL testified that the mother "is a success story" and that she complied with every request, including every request for a drug screen. The mother testified as to the progress she made with her substance abuse issues and that she had not drunk alcohol or smoked marijuana in the five years since

5

the car accident that resulted in the child's temporary custody change to the father. The mother also testified about the crime in the area of the father's home, and the GAL expressed concern about the quality of schools that the child was zoned for in New Jersey versus the quality of the zoned schools in Georgia. The GAL explained that she also had concerns with the father's drug use. The father testified that if asked to take a drug test, he would test positive for marijuana.

There was also testimony that the mother had custody of her daughter, the child's sister. The GAL testified that she felt "comfortable in saying to [the trial court], based upon the evidence that I have reviewed and looked at, that her daughter is safe and she can provide a safe environment for her child." The GAL also testified that the child loved both parents and that the decision as to which parent should have primary physical custody of him was a difficult one.

Here, the evidence at the final hearing demonstrated that both parents were fit and proper parents and each had a loving relationship with the child. Although the evidence showed that years before the final hearing the mother drove the victim while under the influence of drugs and alcohol, there was abundant evidence that the mother rehabilitated herself and maintained a safe environment. We cannot say based on the

evidence in this case that the trial court abused its discretion in awarding primary custody of the children to the mother. See *Brock v. Brock*, 279 Ga. 119, 121 (610 SE2d 29) (2005) (affirming the trial court's grant of primary physical custody of the husband after concluding both parents were fit and proper despite evidence showing that the husband admitted to previously hitting the wife and crashing into her car); *Byrne*, 365 Ga. App. at 241-242 (1) (a) (holding that because there was evidence to support the trial court's conclusion that it was in the best interest of the child for the father to have primary custody, we will not disturb the ruling).[3]

2. The father contends that the trial court erred by failing to incorporate a permanent parenting plan in its legitimation order that fully complies with OCGA § 19-9-1. We agree.[4]

---

[3] The father asks that if we do not reverse the award of primary physical custody, we remand the case for "specific, statutorily grounded findings consistent with the record[.]" "However, a trial court is not required to include in the final decree specific written findings of fact regarding the basis for the judge's decision unless a party requested such on or before the close of evidence." *Byrne*, 365 Ga. App. at 242 (1) (b). "Because the record is devoid of any request by either party that specific written findings of fact be included in the final judgment, none were required." Id. Accordingly, we cannot remand this case for findings of fact.

[4] The mother concedes that the parenting plan does not properly comply with OCGA § 19-9-1.

OCGA § 19-9-1 (a) provides that "[t]he final order in any legal action involving the custody of a child, including modification actions, *shall* incorporate a permanent parenting plan as further set forth in this Code section[.]" (Emphasis supplied.) A parenting plan, unless otherwise ordered by the court,"shall include" the following:

(A) A recognition that a close and continuing parent-child relationship and continuity in the child's life will be in the child's best interest;

(B) A recognition that the child's needs will change and grow as the child matures and demonstrate that the parents will make an effort to parent that takes this issue into account so that future modifications to the parenting plan are minimized;

(C) A recognition that a parent with physical custody will make day-to-day decisions and emergency decisions while the child is residing with such parent; and

(D) That both parents will have access to all of the child's records and information, including, but not limited to, education, health, health insurance, extracurricular activities, and religious communications.

OCGA § 19-9-1 (b) (1).

The parenting plan shall also include:

when a child will be in each parent's physical care, how holidays and school breaks will be spent with each parent, transportation arrangements, whether supervision will be needed for parenting time, an allocation of decision-making authority and what, if any, limitations exist while one parent has physical custody in terms of the other parent contacting the child.

*Pryce v. Pryce*, 359 Ga. App. 590, 591 (1) (859 SE2d 554) (2021); see OCGA § 19-9-1 (b) (2).

Here, the legitimation order did not comply with the requirements of OCGA § 19-9-1 because it did not include: a recognition that a close and continuing parent-child relationship and continuity in the child's life is in the child's best interest; a recognition that the child's needs will change and grow as he matures; a recognition that the parent with physical custody will make day-to-day decisions and emergency decisions while the child is with that parent; specific times of the day of that certain holiday parenting time begins and ends; a specific location where the parties shall exchange the child; and the order is unclear regarding weekend visitation. Because the

trial court did not include an adequate parenting plan in its legitimation order, we vacate the judgment and remand this case for it to include a parenting plan that complies with OCGA § 19-9-1. See *Pryce*, 359 Ga. App. at 593 (1).

*Judgment affirmed in part and vacated in part and case remanded with direction.*

*Gobeil and Davis, JJ., concur.*